**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT STIFFLER**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**APPLE INCORPORATED and VERIZON, INCORPORATED**<br><br>    **Defendants.** | **CIVIL ACTION NO. 2:21-cv-00523** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE
TESTIMONY OF ROBERT RYHAL AND DR. RUSSELL ADAMS**

## I.    Introduction

This is a product-liability case arising out of a house fire that originated in Plaintiff Robert Stiffler's bedroom just minutes after he fell asleep. Independent investigators on behalf of the local Fire Marshal's office and the homeowners' insurance company conducted a thorough investigation that uncovered evidence of smoking materials in the area of origin and evidence of carelessly discarded cigarettes throughout Plaintiff's home. The investigators were able to exclude every other potential ignition source within the area of origin and concluded that Mr. Stiffler's careless disposal of smoking materials in his room was the most likely cause of the fire.

In light of these facts, Plaintiff's insurer did not elect to seek subrogation against any party. Mr. Stiffler, however, filed this lawsuit and contends that his iPhone 6s Plus caused the fire when its battery supposedly spontaneously overheated. In support of these claims, Mr. Stiffler retained two purported experts: Mr. Robert Ryhal, a fire investigator, and Dr. Russell Adams, a pain-

management physician. Neither of these experts is qualified to offer the opinions for which he has been retained, nor are their proffered opinions based upon a reliable scientific basis.

Mr. Ryhal—who purports to opine that the subject fire was caused by a battery-thermal event involving an iPhone 6s Plus—has zero relevant education or experience to opine on battery-thermal events, lithium-ion batteries, or the design and function of the iPhone 6s Plus. Moreover, Mr. Ryhal did not inspect the fire scene, examine the allegedly defective device, or conduct or review any testing to validate his opinions. In fact, Mr. Ryhal admits that he does not know and has not attempted to determine whether a battery-thermal event involving an iPhone 6s Plus is even *capable* of having caused this fire.

Dr. Adams seeks to opine that Mr. Stiffler's injuries were caused by a thermal source that was "explosive" in nature, but Dr. Adams is an occupational medicine physician, not a burn doctor, and has never treated a patient with "explosive" burn injuries. Unsurprisingly, Dr. Adams's one-page "report" is entirely beret of any substantive analysis or reliable methodology. Dr. Adams readily admits that he has no reliable scientific basis to distinguish between "explosive" and other thermal injuries, and that Mr. Stiffler's burn injuries are consistent with exposure to an open flame.

As set forth below, Plaintiff cannot meet his burden of establishing the admissibility of the opinions of either Mr. Ryhal or Dr. Adams. This Court should therefore exercise its gatekeeping function and exclude those opinions in their entirety under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## II.   Background

In the early morning hours of July 16, 2018, a fire broke out in Mr. Stiffler's bedroom. *See* ECF No. 1-2 (Complaint) ¶ 1. Just prior to the fire, Mr. Stiffler testified that he had been smoking on the enclosed porch of his home. *See* Deposition Transcript of Robert Stiffler, attached as Exhibit

B at 173:15-22. When he then went to his room, he testified that he plugged in an iPhone 6s Plus, which was at a 0% state of charge, and got into bed. *Id.* at 183:7-17. Mr. Stiffler testified that, approximately five minutes later, he heard a popping sound that alerted him to a fire in his room. *Id.* at 2011:1-10. Mr. Stiffler was found to have opiates, alcohol, benzodiazepine and methamphetamines in his system at the time. *See* July 17, 2018 Medical Record, attached as Exhibit C.

Alleghany County Fire Marshal Karelitz investigated the fire immediately after the incident. *See* Emergency Services Report, attached as Exhibit D. As part of that investigation, Fire Marshal Karelitz interviewed the homeowners, conducted a scene inspection, and analyzed all "available ignition sources within the general area of origin" to determine a potential cause of the fire. *Id.* at 4. Fire Marshal Kareltiz reported finding smoking materials within the area of origin, which he determined was the area of Mr. Stiffler's bed, and carelessly discarded smoking materials throughout the Stifflers' home. *Id.* Based upon the investigation, the "combined opinion of the fire scene investigators [was] that the fire was caused by careless smoking." *Id.* at 5.

The Stifflers' insurance company also undertook a separate cause and origin investigation to determine whether there were any rights of subrogation arising out of this fire. To conduct that investigation, the insurance company hired John Henry of ReCon Group. *See* ReCon Group Report, attached as Exhibit E. Like Fire Marshal Karelitz, Mr. Henry conducted a thorough scene investigation and interviewed the Stifflers. *Id.* at 1. And, also like Fire Marshal Karelitz, Mr. Henry determined that the most probable cause of the fire was the careless use of smoking materials based in part on the presence of smoking materials throughout the home. *Id.* at 2. Accordingly, the insurance company declined to pursue any subrogation arising out of this fire. Apple was not put on notice of the fire or invited to any scene inspection.

Two years after the fire, Plaintiff retained the services of Mr. Robert Ryhal to conduct a cause and origin investigation for purposes of this litigation. Mr. Ryhal did not conduct a scene inspection or interview the Stifflers. *See* Deposition Transcript of Robert Ryhal, attached as Exhibit F, at 70:21-71:6. Nor did Mr. Ryhal ever examine the iPhone 6s Plus alleged to have been present at the time of the fire, as no iPhone 6s Plus (or any other Apple product) was recovered from the scene. *Id.* at 71:12-14. Mr. Ryhal opines that the most probable cause of the fire is an alleged battery-thermal event (i.e., a sudden release of the battery's stored energy from a short circuit or application of external heat) involving the iPhone 6s Plus. *See* Ryhal Report, attached as Exhibit G. Mr. Ryhal did not conduct any testing or refer to any literature to determine whether such an event was capable of causing this fire. Ex. F at 84:14-20; 85:9-23; 185:24-1.

Plaintiff also disclosed Dr. Adams to opine on the "origin burn." *See* Adams Report, attached as Ex. H. Dr. Adams' "report" consists of two substantive paragraphs in which he purports to opine that Mr. Stiffler's injuries were caused by an exposure to a thermal source that was "explosive" in nature. *See id*. Dr. Adams claims to base his opinion on Mr. Stiffler's medical records and the Fire Marshal's report that the fire originated in Mr. Stiffler's bedroom. Dr. Adams is not a burn doctor, has no expertise in burn causation, and has never treated any patient with so-called "explosive" burn injuries. *See* Deposition Transcript of Russell Adams, attached as Exhibit I, at 64:24-65:5; 72:23-73:19; 81:21-82:20.

Apple retained Dr. Donald Hoffmann PhD, PE, IAAI-CFI of Safety Engineering Labs, an expert in fire origin and cause investigations and lithium-ion batteries. Dr. Hoffmann opines that the subject iPhone 6s Plus was not a competent ignition source for this fire. *See* Donald J. Hoffmann Affidavit, attached as Exhibit J, at 18. Dr. Hoffmann based that opinion on testing SEL has performed on exemplar iPhone devices, including the iPhone 6s Plus, at various states of

charge, including substantially above the approximate 5% state of charge that Mr. Stiffler's iPhone 6s Plus had at the time of the incident. *Id.* at 16. That testing determined unequivocally that the iPhone 6s Plus does not "explode" during a thermal event and is not capable of causing the fire at issue here; it instead vents gas *without* flames. *Id.* at 15, 19. Plaintiff's experts did not disclose any testing or otherwise seek to rebut Dr. Hoffman's testing or opinions.

## III.   Argument

### A.   Legal Standard

Under Rule 702 of the Federal Rules of Evidence, Plaintiff carries the burden to establish the admissibility of his experts' testimony by demonstrating that they meet the standard articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court charged trial judges to be "gate-keepers" with the responsibility of excluding unreliable expert testimony. *Id.* at 597; *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 320-21 (3d Cir. 2003). This gate-keeping function is critical given that a jury may give substantial and undue weight to unreliable testimony provided under the veil of expertise. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999) (quoting *Daubert*, 509 U.S. at 592).

The Third Circuit thus requires the party proffering expert testimony to demonstrate that the witness possesses specialized expertise on the specific topic on which he or she seeks to testify, and that the proffered testimony is reliable. *Calhoun*, 350 F.3d at 321. In other words, the proffered opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Id.* (quoting *Daubert*, 509 U.S. at 590). A "'key question'" that a trial court must consider in evaluating whether proffered expert testimony is sufficiently reliable is "'whether it can be (and has been) tested.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) (quoting *Daubert*, 509 U.S. at 593) (affirming exclusion of expert testimony where

expert failed to testify his hypothesis, rendering opinion unreliable under *Daubert*); *see also Chester Valley Coach Works v. Fisher-Price, Inc*., No. CIV. A. 99 CV 4197, 2001 WL 1160012, *11-12 (E.D. Pa. Aug. 29, 2011) (excluding expert testimony where expert "never tested his theory on causation nor did he perform any separate tests or experimentation to support his conclusions.").

**B.    The Court should exclude Mr. Ryhal's opinions because he is unqualified and because his opinions do not meet FRE 702's admissibility standards.**

Mr. Ryhal lacks the qualifications to render an opinion regarding lithium-ion batteries, battery-thermal events, or iPhone 6s Plus devices. Nevertheless, he purports to opine that the fire at issue was most likely caused by a battery thermal event in an iPhone 6s Plus, and that the fire began in the immediate vicinity of a bedside table in Plaintiff's bedroom. Separate and apart from Mr. Ryhal's lack of qualifications to offer these opinions, they are speculative, unsupported by sufficient facts or data, and entirely unreliable.

**1.    Mr. Ryhal is not qualified to offer opinions about any alleged battery thermal event in the subject iPhone 6s Plus.**

Mr. Ryhal does not have any expertise regarding lithium-ion batteries or battery-thermal events, despite being retained to offer the opinion on those very subjects. Mr. Ryhal has never before testified in a case involving a lithium-ion battery or battery-thermal events. Ex. F at 14:9-17. He has never performed any testing of battery-thermal events. *Id.* at 55:13-15. And Mr. Ryhal has not reviewed any relevant scientific literature regarding the cause or mechanism of a battery thermal event in a lithium-ion battery. *Id.* 54:24-55:4. When asked during his deposition if he could describe in detail the mechanism of a battery thermal event in a lithium-ion battery, Mr. Ryhal could not do so, declaring his desire to "stay in [his] lane." *Id.* at 53:18-22.

Nor does Mr. Ryhal have any expertise on the iPhone 6s Plus. Mr. Ryhal admits that he did not do any investigation into iPhones for this case. *Id.* at 20:5-7. Mr. Ryhal has never inspected or tested an iPhone 6s Plus and admits that he does not know anything about the design or

construction of the batteries within an iPhone 6s Plus. *Id.* at 55:16-20; 56:24-57:14. Moreover, despite Apple having produced hundreds of pages regarding the design, manufacture, and testing of the iPhone 6s Plus, Mr. Ryhal concedes that he did not review any of those documents. *Id.* at 55:24-56:1. Mr. Ryhal's stubborn lack of curiosity about the product for which he has been retained to offer "expert" testimony is emblematic of the lack of rigor of his proffered opinions.

The Court's inquiry need go no further. It is black-letter law that an expert's "knowledge, skill, experience, training, or education"—i.e., his expertise—must be in the field in which he is proffered to testify. *See, e.g.*, *Calhoun*, 350 F.3d at 322; *Balu v. Cincinnati Ins. Co.*, CIVIL ACTION NO. 19-3604, 2021 WL 1427651, at *2 (E.D. Pa. Apr. 15, 2021); *Three Rivers Hydroponics, LLC* v. *Florists' Mut. Ins. Co.*, No. 2:15-cv-809, 2020 WL 419946, at *3-4 (W.D. Pa. Jan. 27, 2020). While Mr. Ryhal is a fire investigator, he is not an electrical engineer or otherwise qualified to opine about the complex field of battery technology or the iPhone 6s Plus. The Court should thus preclude Mr. Ryhal from offering his proffered causation opinions.

### 2. Mr. Ryhal's opinions are not reliable.

Regardless of Mr. Ryhal's lack of qualification to testify about battery-thermal events or the iPhone 6s Plus, his cause and origin opinions should be excluded because (a) Mr. Ryhal failed to credibly exclude smoking as the cause of this fire and (b) his assumptions about the effect of a battery-thermal event in an iPhone 6s Plus are demonstrably incorrect. Mr. Ryhal's opinions are therefore not based on a reliable methodology or on sufficient facts and data. As a result, these opinions are unreliable and inadmissible under Rule 702 and *Daubert*.

### a. Mr. Ryhal's point of origin opinions are unreliable.

Mr. Ryhal has no reliable basis to opine that the point of origin for the subject fire is in the "immediate vicinity" of a bedside table allegedly located alongside the head end of Mr. Stiffler's bed. *See* Ex. F at 163:20-25. Mr. Ryhal claims his opinions are based on (1) the location of the

burn injuries on Mr. Stiffler's face, and (2) his belief that the table was located at the head end of Mr. Stiffler's bed. Neither is a sufficient basis to admit this speculation.

Mr. Ryhal first claims that, because Mr. Stiffler's injuries were primarily to his face, the fire likely started at the table next to Mr. Stiffler's bed. *Id.* at 98:22-99:4. But the location of Mr. Stiffler's injuries says nothing about whether or not the fire originated on a table, as opposed to any other surface near Mr. Stiffler. In fact, even Mr. Ryhal concedes that Mr. Stiffler's injuries would be the same whether the fire started on a tabletop or on any other surface "in front of his face." *Id.* at 100:12-15. Mr. Stiffler's injuries therefore do not support Mr. Ryhal's origin opinion.

Mr. Ryhal next opines that the fire must have started at the bedside table at the head end of Mr. Stiffler's bed because Mr. Stiffler testified that is where the table was located. *Id.* at 204:4-7. Yet Mr. Ryhal's assumptions about the location of the bedside table are not supported by any physical or other evidence. *Id.* at 126:23-127:1; 132:18-23. The photographs taken by the fire department immediately after the fire show that the bedside table was located at the *foot end* of Mr. Stiffler's bed. *Id.* at 119:20-120:7. That photographic evidence is consistent with Mr. Stiffler's own diagram of his bedroom, in which he drew the bedside table near the *foot end* of his bed, not near his face. *See* Stiffler Room Diagram, attached as Exhibit K; *see also* Ex. F at 203:13-16.

Mr. Ryhal offers no reason, much less any scientific methodology, for dismissing the evidence that is contrary to his preconceived notions. Indeed, Mr. Ryhal admitted that he was willing to disregard all contrary evidence in favor Mr. Stiffler's own statements during litigation about where the bedside table was located. Ex. F at 148:24-149:10. That is apparently because, if the location of the table was anywhere other than directly adjacent to Mr. Stiffler's face, Mr. Ryhal concedes that the iPhone 6s Plus could not have started this fire. *Id.* at 135:3-6.

Because Mr. Ryhal's origin opinion is not based upon sufficient facts or data—and is in fact contrary to available evidence—it is unreliable and should be excluded. *See Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 422 (W.D. Pa. 2000) (excluding fire investigator opinions because they followed no valid methodology and consisted only of the witness's *ipse dixit*).

> **b.** **Mr. Ryhal did not reliably eliminate smoking as the cause of the fire.**

Mr. Ryhal also fails to credibly eliminate smoking as the cause of this fire and explain why his conclusions differ from the independent investigators that undertook a substantially more rigorous review. On one hand, Mr. Ryhal admits that smoking materials were found in Mr. Stiffler's bedroom *and* that such materials can be a competent ignition source for this type of fire. Ex. F at 67:3-19; 186:13-24. On the other hand, Mr. Ryhal maintains that smoking could not have caused this fire. This logical fallacy contravenes industry-standard guidelines for fire investigators embodied in NFPA[1] 921 and independently renders Mr. Ryhal's opinion unreliable.

NFPA 921 is the universally accepted guide for fire investigations in the United States. Federal courts across the country and in this District have recognized NFPA 921 as the gold standard for cause and origin investigations, particularly in evaluating the admissibility of proffered expert testimony. *See, e.g.*, *Kozar v. Sharp Elecs. Corp.*, No. Civ.A. 04-901, 2005 WL 2456227, at *3 (W.D. Pa. Sept. 30, 2005). An expert seeking to opine about an investigation undertaken pursuant to of NFPA 921 must articulate how he "applied the [NFPA 921] methodology reliably to the facts of the case." *Werth v. Hill-Rom, Inc.,* 856 F. Supp. 2d 1051, 1060 (D. Minn. 2012). An investigator must therefore identify the presence of a competent ignition source, the type and form of the material first ignited, and the failure that caused the ignition. *See*

---

[1] NFPA is the National Fire Protection Association, a non-profit organization that, among other things, publishes industry standards for fire origin and cause investigations.

*Kozar*, 2005 WL 2456227 at *3. NFPA 921 also requires, at a minimum, the "*credible* elimination of all other potential ignition sources." *Id.* (emphasis added). Courts thus exclude fire investigators' cause and origin opinions where, as here, their opinions are not based upon a reliable application of NFPA 921. *Chester Valley Coach* Works, 2001 WL 1160012, at *11 (excluding expert where proffered fire investigation opinion disregarded NPFA 921). Mr. Ryhal's attempt to exclude smoking as a reasonable alternative cause falls woefully short of the rigors of NFPA 921.

Mr. Ryhal first claims to be able to exclude smoking because he believes that there was no evidence of smoking materials near the head end of Mr. Stiffler's bed. Ex. F at 187:12-14. That is neither supported by the evidence nor a reliable basis for his opinion. First, the investigators who *did* inspect the scene reported finding smoking materials within the area of origin and Mr. Ryhal acknowledges that a cigarette pack and a marijuana pipe were found in and around Mr. Stiffler's bed, including at the head end, immediately after the fire. *Id.* at 66:14-67:9; 188:5-13. Second, Mr. Ryhal concedes that he would not expect to find a cigarette butt in Mr. Stiffler's bedroom, even if that cigarette had been the cause of the fire. *Id.* at 188:22-189:4. As a result, even if Mr. Ryhal was correct that no smoking materials had been found near Mr. Stiffler's bed (which he is not), that fact alone would not support Mr. Ryhal's opinion.

Mr. Ryhal next claims to be able to exclude smoking as the cause of this fire because, according to Mr. Ryhal, Mr. Stiffler's injuries are inconsistent with a smoking-related fire. But Mr. Ryhal has no reliable scientific basis to offer that opinion. Indeed, Mr. Ryhal admits that this is "just [his] belief," and he is aware of no study, experiment, literature, or testing that supports his opinion. *Id.* at 170:5-9; 172:1-3. Of course, a "belief," unsupported by testing, is not a reliable expert opinion. *Oddi*, 234 F.3d at 158 (affirming exclusion of expert opinion where expert "conducted no tests" and "used little, if any, methodology beyond his own intuition."); *Calhoun*,

10

350 F.3d at 322 (excluding expert where there was "no literature confirming this theory, nor demonstrable tests").

Finally, Mr. Ryhal claims to have excluded smoking as a cause of this fire based upon Mr. Stiffler's denial, in the course of this litigation, of having smoked in his bedroom. Mr. Ryhal does so because he credits Mr. Stiffler's self-serving statements to the exclusion of the contrary physical and photographic evidence from the scene. Ex. F at 148:24-149:8 (Q: We just have to take Stiffler's word over what all the physical evidence is, is that right? A: I believe he is the strongest evidence, yes.). But, as NFPA 921 makes clear, an investigator is not to simply accept the statements of witnesses with obvious bias or motivation to minimize their own involvement. *See* NFPA 921, attached as Exhibit L, 14.4.1.2. Mr. Ryhal offers no justification for disregarding the physical evidence in favor of Mr. Stiffler's self-serving statements.

Mr. Ryhal's purported exclusion of smoking as the cause of this fire plainly contravenes NFPA 921 and renders his conclusions unreliable and inadmissible. *See State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 446 (E.D. Pa. 2013) (holding investigator's failure to follow NPFA 921 renders conclusions unreliable); *see Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1059 (8th Cir. 2005) (excluding experts where "neither expert carefully examined this hypothesis of fire origin against empirical data obtained from fire scene analysis and appropriate testing, as required by NFPA").

### c. Mr. Ryhal's opinion as to the iPhone is not based on sufficient facts or data.

Finally, Mr. Ryhal's opinion that the cause of this fire must have been a battery-thermal event involving an iPhone 6s Plus is entirely without foundation and should be excluded. Mr. Ryhal concedes that, to be the cause of a fire, the suspect item must be "a capable, credible ignition source." Ex. F at 92:14-19. Accordingly, for Mr. Ryhal's opinion that Mr. Stiffler's iPhone 6s Plus

11

caused the fire to carry any weight, Mr. Ryhal must establish that the iPhone 6s Plus was capable of having ignited this fire. And these opinions all must be based on reliable scientific evidence. Mr. Ryhal has not made, and cannot make, any such showing.

Based upon Mr. Stiffler's testimony, the iPhone 6s Plus that was allegedly located in his bedroom was at a very low state of charge—at 5% or less—at the time of the fire. *See* Ex. J at 14. Mr. Ryhal readily concedes that he has no idea whether an iPhone 6s Plus at that low state of charge—or, for that matter, at any other state of charge—could be a competent ignition source for this fire, and that he has conducted no analysis whatsoever to support his hypothesis. *See* Ex. F at 84:14-20; 85:9-23; 185:24-1. According to Mr. Ryhal, he did not conduct any such analysis because he "didn't have the budget" to do so. *Id.* at 200:24-201:6.

Mr. Ryhal acknowledges, however, that if testing demonstrated that the iPhone 6s Plus were not a competent ignition source, the device could not have caused the fire. *Id.* at 185:24-186:12. Apparently unbeknownst to Mr. Ryhal, Apple's expert, Dr. Hoffmann, did conduct that testing. *See* Ex. J at 16-17. Specifically, Dr. Hoffmann tested exemplar iPhone devices, including the iPhone 6s Plus, at various states of charge, including substantially above the 5% state of charge that the subject iPhone 6s Plus was charged to at the time of the subject fire. The testing involved applying heat to those devices until they underwent a battery-thermal event. *Id.* at 16. Regardless of the state of charge, the battery-thermal event resulted in only minimal damage to the device itself and no flames. *Id.* at 17. Those events were incapable of igniting sheets that were placed under the exemplar devices, confirming that the subject iPhone 6s Plus was not a competent ignition source. *Id.* at 17-18. Mr. Ryhal's speculative theory that this fire was ignited by a battery-thermal event involving an iPhone 6s Plus is thus demonstrably wrong. By Mr. Ryhal's own admission, the device at issue could not have caused the instant fire. *See* Ex. F at 186:6-12.

Mr. Ryhal's contrary opinions based on "unsupported speculation" are not admissible. In *Chester Valley Coach Works*, for example, the Court excluded an expert's fire causation opinion where the expert "did not use an exemplar to test his theory nor [did] he point to any such tests performed by others." *Chester Valley Coach Works*, 2001 WL 1160012, at *11. Mr. Ryhal has similarly failed to support his opinions, which should therefore be excluded. *See, e.g.*, *Oddi*, 234 F.3d at 158 ("expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (citation omitted).

**C.     The Court should exclude Dr. Adams's opinion because he is not qualified and because his opinion lacks a reliable scientific foundation.**

In his one-page "report," Dr. Adams, Plaintiffs' medical expert, opines that Mr. Stiffler's burns were caused by a thermal source that was "explosive" in nature. This opinion should be excluded because Dr. Adams is not qualified to offer opinions as to the cause of any particular burn injury and because there is no reliable methodology supporting Dr. Adams's opinion.

**1.     Dr. Adams is not qualified to offer opinions about burn causation.**

Dr. Adams opines that the nature of Mr. Stiffler's facial burn injuries suggests that they were caused by a thermal source that was "explosive" in nature, as opposed to exposure to, for example, an open flame. *See* Ex. I at 95:2-7. Dr. Adams lacks any qualification to offer such testimony. Dr. Adams is not a burn doctor. He works primarily at an opioid treatment facility and is the medical director of a clinic that focuses on work-related back injuries. *Id.* at 11:15-12:9; *see also* Russell Adams's CV, attached as Exhibit M. Although he occasionally works at an emergency room seeing patients, Dr. Adams could not recall *ever* treating a patient who has been burned as the result of any type of explosion. Ex. I at 64:24-65:5.

Dr. Adams' primary qualification appears to be his relationship with Plaintiff's counsel. Plaintiff's attorney was, at one point, Dr. Adams's attorney. *Id.* at 20:20-24. They have since

become friends and golfing partners. *Id.* at 34:22-35:5. Dr. Adams has never before testified at trial as a retained expert on any subject. *Id.* at 19:11-14. He has been retained in fewer than a half-dozen prior cases as a retained expert, but all have been cases with Plaintiff's attorney or one of his colleagues. *Id.* at 20:25-21:7; 23:2-7; 23:23-24:2. None of those cases have dealt with burn injuries, but have instead involved matters such as whether an individual committed to a psychiatric facility should get his gun back. *Id.* at 23:13-15; 24:25-25:17. Because Dr. Adams lacks any expertise in burn injury causation, his opinion on that topic should be excluded. *See Calhoun*, 350 F.3d at 322; *Balu,* 2021 WL 1427651, at *3.

### 2.    Dr. Adams's opinion lacks reliable scientific foundation.

Against this backdrop, it is no surprise that Dr. Adams's specific opinion in this case lacks any reliable scientific foundation. In his report, Dr. Adams opines that the nature of Mr. Stiffler's facial burn injuries suggests that they were caused by a thermal source that was "explosive" in nature because of their location. *See* Ex. H. In what appears to be a *post hoc* effort to bolster his opinion, Dr. Adams also asserted during his deposition—though nowhere in his report—that he believed Mr. Stiffler's facial injuries were from an "explosive" source because a foreign body was allegedly removed from Mr. Stiffler's face during surgery. Ex. I at 94:14-16; 95:8-13. Neither basis supports Dr. Adams's proffered opinion.

First, the location of Mr. Stiffler's burn injuries says nothing about whether or not they were caused by exposure to a thermal source that was "explosive" in nature. *Id.* at 81:21-82:20. In fact, Dr. Adams acknowledged that exposure to open flames in close proximity to Mr. Stiffler's face would result in the same burn injuries as he received in this fire. *Id.* In other words, there is no way to determine on the basis of the burn injury whether Mr. Stiffler was exposed to a thermal source that was "explosive" in nature, or whether he was simply in close proximity to open flames, such as that which would be caused by a fire caused by an unattended cigarette. *Id.*

14

Second, Dr. Adams lacks any reliable basis to opine that the alleged presence of an unidentified "foreign body" in Mr. Stiffler's face means his injuries were caused by an explosive force. Dr. Adams could not describe the "foreign body" he believes was removed from Mr. Stiffler's face. *Id.* at 75:3-16; 75:2-5. Nor could Dr. Adams even identify any medical record that supports his assumption. *Id*. at 89:12-90:5. Moreover, Dr. Admits that Mr. Stiffler collapsed onto the floor during the fire and was "dragged" out of the home by his parents, which offers an alternative explanation for the presence of debris in and around Mr. Stiffler's face. *Id.* at 94:2-17.

To the extent Dr. Adams' opinion is meant to imply that Mr. Stiffler's injuries were caused by an alleged battery-thermal event, Dr. Adams concedes he has no knowledge about whether a battery thermal event in Plaintiff's iPhone 6s Plus could have caused Plaintiff's injuries. *Id.* at 85:4-17. The undisputed evidence—based on reliable and replicable scientific testing—is that it could not. *See* Ex. J at 19. Indeed, the exemplar devices that Dr. Hoffman tested did not "explode" or otherwise expel any "shrapnel" or other metal fragments when forced to undergo a thermal event. *Id.*

In sum, Dr. Adams' proffered opinions are without reliable foundation and should be excluded. He "does not cite any peer-reviewed literature or explain how it supports his conclusions" and he "does not discuss generally accepted … methods, let alone analyze their relationship to his conclusions." *See Hook v. Whiting Door Mfg. Corp*., 2019 WL 630324, at *10 (W.D. Pa. Feb. 14, 2019).

IV.    **Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion and enter an order precluding both Mr. Ryhal and Dr. Adams from testifying at trial.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.

By: _____

Stuart H. Sostmann, Esquire
PA I.D. No. 84065
shsostmann@mdwcg.com
*Counsel for Defendants Apple Inc. i/s/h/a Apple*
*Incorporated and Cellco Partnership d/b/a*
*Verizon Incorporated*

## CERTIFICATION OF SERVICE

I, Stuart H. Sostmann, Esquire, hereby certify that a true and correct copy of the foregoing

**Defendants' Memorandum in Support of Their Motion to Exclude Testimony of Robert**

**Ryhal and Dr. Russell Adams** has been served this 31st day of August, 2022 to the following

counsel via electronic mail:

Michael F. Santicola, Esquire
Santicola, Steele & Fedeles, P.C.
722 Turnpike Street
Beaver, PA 15009
michael@ssslawyer.com
*Counsel for Plaintiff*

Respectfully submitted,

MARSHALL DENNEHEY WARNER COLEMAN
& GOGGIN, P.C.

By: _____
Stuart H. Sostmann, Esquire
PA I.D. No. 84065
shsostmann@mdwcg.com

*Counsel for Defendants Apple Inc. i/s/h/a*
*Apple Incorporated and Cellco Partnership*
*d/b/a Verizon Incorporated*

Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
T: (412) 803-1150    F: (412) 803-1188