IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STIFFLER, | ) |
| | ) |
| Plaintiff | ) |
| | ) 21-cv-523-NR |
| v. | ) |
| | ) |
| APPLE INCORPORATED and | ) |
| VERIZON, INCORPORATED, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

Three days after he purchased a new iPhone 6 Plus, Plaintiff Robert Stiffler sustained burns and other injuries in a serious house fire. ECF 1-2, ¶¶ 7, 9, 16. Mr. Stiffler contends that the two events are connected; he believes that the fire began when his iPhone exploded. *Id.* at ¶¶ 9, 15, 21. So Mr. Stiffler sued Apple and Verizon – respectively the manufacturer and seller of his phone. He alleges negligence (Count I, against both); strict products liability (Count II, against Apple); breach of the implied warranty of merchantability (Count III, against Verizon); and he requests punitive damages (Count IV, against Apple).

To support his theory of the case, Mr. Stiffler has proffered two expert opinions. The first, from Robert Ryhal, opines that the fire originated on the TV table next to Mr. Stiffler's bed, ECF 40-7, pp. 33, and that overheating and failure of the iPhone 6s Plus battery is the most plausible source, *id.* at pp. 32-33 (H10). The second, from Dr. Russell Adams, opines that Mr. Stiffler likely was injured by an explosion. ECF 40-8. Apple now asks the Court to exclude these opinions as unreliable under *Daubert v. Merrell Dow Pharmaceuticals*. 509 U.S. 579 (1993).

The Court found that no *Daubert* hearing was necessary to assess Mr. Ryhal's opinion, but that one was needed for consideration of Dr. Adams's opinion. It held a

1

*Daubert* hearing regarding Dr. Adams's opinion on January 17, 2023. ECF 53. The parties then submitted supplemental briefing. ECF 56; ECF 57. The issue is now ready for disposition.

After carefully considering the parties' arguments, the record, and the applicable law, the Court will allow Mr. Ryhal's opinion but exclude Dr. Adams's.

## FACTUAL BACKGROUND[1]

Mr. Stiffler's home caught fire in the early morning hours of July 16, 2018. *See* ECF 1-2, ¶¶ 9-10. Mr. Stiffler had been out on his stoop finishing a cigarette and talking on the phone. ECF 40-2, 172:14-174:5. He was not allowed to smoke inside. *Id.* at 80:18-25. When he noticed his phone heating up and his battery dying, he went inside and plugged it in. *Id.* at 173:4-174:7; 176:7-20. Shortly thereafter, he got in bed. *Id.* at 203:21-25. But before he could fall asleep, he heard a "hiss" and a "pop," and he fell. *Id.* at 209:15-23. He was knocked out. *Id.* at 210:11-15. When he came to, his room was on fire. *Id.* at 213:24-214:19. He soon fell again. *Id.* at 216:7-14. He "army-crawled" out of his room and yelled to his parents that the house was on fire. *Id.* at 218:7-24. Mr. Stiffler was then hospitalized for serious burn injuries.

As noted above, to support his claims, Mr. Stiffler retained two experts. Robert Ryhal offered his fire investigation expertise, and reviewed forensic reports, photographs from the scene, and deposition testimony to analyze potential causes of the fire and construct a narrative of what happened that night. ECF 40-7, p. 1. He ultimately concluded that the "Apple iPhone 6 Plus was the only credible ignition source in the area of origin and [it] cannot be eliminated as a means of causation."

---

[1] In considering a *Daubert* motion, the Court considers the evidence in the light as described by Mr. Stiffler and his experts, even if disputed by Apple. This is so because experts can rely on disputed facts, and the Court cannot exclude an expert's opinion simply because it is based on a disputed version of events. *See Walker v. Gordon*, 46 F. App'x 691, 695–96 (3d Cir. 2002) ("An expert is nonetheless, permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury.").

*Id.* at p. 35. Dr. Russell Adams offered his medical expertise to conclude that based on records of Mr. Stiffler's injuries, the "source of the injury was both close to [Mr. Stiffler's] face and was of an explosive nature." ECF 40-8.

## DISCUSSION & ANALYSIS

In deciding a *Daubert* motion, the Court must evaluate whether the expert evidence evinces "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is sufficiently tied to the facts of the case so that it fits the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591)). "The proponent of the expert testimony bears the burden to show by a preponderance of the evidence that their expert's opinion is reliable." *Whyte v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 691 (W.D. Pa. 2021) (Ranjan, J.) (citation omitted).

In this case, the Court finds that Mr. Ryhal satisfies the *Daubert* standard, but Dr. Adams does not.

**I.     The motion to exclude testimony and evidence from Robert Ryhal will be denied.**

As an initial matter, the Court finds that Mr. Ryhal qualifies as an expert for purposes of this case. An expert must "possess specialized expertise" to meet the requirements of Federal Rule of Evidence 702. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir 2008) (quoting *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003)). That is, he or she must have some relevant "skill or knowledge greater than the average layman." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (cleaned up). This can be based in "practical experience as well as

academic training and credentials." *Id.* (cleaned up). Mr. Ryhal is an experienced fire inspector. He has completed well over 1,000 hours of training and has supervised hundreds of fire-origin investigations. ECF 41-1. Such training and experience makes Mr. Ryhal significantly more skilled or knowledgeable than the average person.

Apple objects that Mr. Ryhal "does not have any expertise regarding lithium-ion batteries or battery-thermal events[.]" ECF 40, p. 6. But such narrowly tailored experience is not necessary to Mr. Ryhal's specific opinion. That's because Mr. Stiffler is offering Mr. Ryhal "as an expert on fire investigations, specifically as to origin and cause." ECF 41, p. 3. Mr. Ryhal analyzed the scene primarily to determine the geographic origin of the fire. *See* ECF 40-7. His conclusion that the phone battery was the cause primarily resulted from process of elimination; Mr. Ryhal eliminated other ignition sources based on analysis of the scene and the items' location in the room. *Id.* He did not expound expertly on the characteristics of batteries. *Id.* Though it would perhaps have been better for Mr. Stiffler to hire a fire inspector who is also an expert in batteries, the Third Circuit has explained that "it is an abuse of discretion to exclude testimony simply because…the proposed expert does not have the specialization the Court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) (citation omitted). Instead, Rule 702 is meant to be interpreted liberally in evaluating expert qualifications. *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

Once an expert has been qualified, the evidence he or she submits must also prove reliable and must fit the case – that is, it must "help[] the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (cleaned up). A court can consider a variety of factors, including: "(1) whether a method consists of a testable hypothesis; (2) whether the method is subject to peer

4

review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." *Whyte*, 514 F. Supp. 3d at 694 (citation omitted).  Mr. Ryhal's opinion meets these requirements.

To reach his conclusion that the iPhone originated the fire next to Mr. Stiffler's bed, Mr. Ryhal reviewed reports compiled by law enforcement and insurance inspectors, including hundreds of photos taken of the scene.  ECF 40-7, p. 3.  He also reviewed multiple depositions.  *Id.* at p. 13.  Mr. Ryhal's expert report walks through photos and notes his observations of them, including what the room contained, where there appeared to be heat damage, oxidation, structural damage, and more.  ECF 40-7.  He explained that he considered factors like burn patterns, available fuels, and ventilation.  *Id.* at p. 28.  Mr. Ryhal then ran through ten hypotheses as to possible causes of the fire, explaining in detail why most of them – except for the iPhone near the bed – could be excluded.  *Id.* at pp. 31-33.

Apple argues that Mr. Ryhal's conclusions are speculative and do not reflect a reliable methodology.  ECD 40.  The Court disagrees.

Mr. Ryhal's report utilizes the very type of analysis Apple contends is missing. Apple explains that an expert must "identify the presence of a competent ignition source, the type and form of material first ignited, and the failure that caused the ignition."  ECF 40, p. 9.  And the National Fire Protection Association's standards, the so-called "gold standard" in the industry, require that the process must include "*credible* elimination of all other potential ignition sources."  *Id.* at p. 10 (emphasis in original; cleaned up).  Even if Mr. Ryhal did not couch his report specifically in NFPA terms, Mr. Ryhal discussed ten separate possible ignition sources and potential

5

failures, and he listed factors in the room that led him to eliminate nine. ECF 40-7. In other words, he captured the content of the standards in his report, if not the exact terminology. Whether this elimination was sufficiently "credible" is a question for the jury. *See Chester Valley Coach Works, Inc. v. Fisher-Price, Inc.*, No. 99-4197, 2001 WL 1160012, at *3 n.5 (E.D. Pa. Aug. 29, 2001) ("We note that *Daubert* does not require that an expert physically refer to a treatise such as NFPA 921 when its fundamental concepts are intimately familiar to the expert and thus an intuitive part of his basic methodology.").

Further, even if Mr. Ryhal's report could have been more thorough and could have outlined "the best methodology," it still clearly evinces a scientific method. Mr. Ryhal presented his opinions as a series of hypotheses, which another investigator could re-create and test. *E.g.,* ECF 40-7, p. 34 (H7) ("The window air conditioner was mounted inside of the vinyl window. Analysis of development of the ceiling plume is inconsistent with a fire in the immediate vicinity of the window."). Moreover, a colleague peer reviewed Mr. Ryhal's report and approved it. *Id.* at p. 35. Thus, the Court finds that "good grounds" support Mr. Ryhal's opinion.

In the end, the "strong preference for admitting any evidence that may assist the trier of fact" guides the Court's analysis. *Pineda*, 520 F.3d at 243 (citations omitted). Typically, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 244 (cleaned up). That's because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596 (citation omitted). Ultimately, "[t]he test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Instead, the Court looks to whether the expert's testimony is supported by good grounds. The standard for

reliability is not that high. It is lower than the merits standard of correctness." *Karlo* 849 F.3d at 81 (cleaned up). The Court finds that Mr. Ryhal has met this standard.

At trial, Apple is free to cross-examine Mr. Ryhal and attempt to undermine his process and conclusions. It can also introduce competing expert testimony. But Mr. Ryhal's analysis would be helpful to the jury, and so the Court will not exclude Mr. Ryhal's expert opinion.

## II. The motion to exclude testimony and evidence from Dr. Russell Adams will be granted.

Mr. Stiffler also submitted an expert report from Dr. Russell Adams – a pain-management physician. The Court finds that Dr. Adams, too, qualifies as an expert in this case. Again, an expert must have some relevant "skill or knowledge greater than the average layman." *Elcock*, 233 F.3d at 741 (cleaned up). Dr. Adams has practiced medicine since 2005. ECF 40-13, p. 3. For most of that time, he has worked in an emergency room. *Id.* Additionally, he has military medical experience. *Id.* Therefore, the Court concludes that Dr. Adams's experience diagnosing and treating injuries exceeds that of an average person, even if he is not a burn doctor.

Dr. Adams's opinion falls short on reliability, however. Even after holding a *Daubert* hearing to clarify Dr. Adams's conclusions and methodology, the Court is not persuaded that his testimony at trial would be scientifically sound, for at least three reasons.

First, his central conclusion in his one-page report is that the "source of the injury was both close to [Mr. Stiffler's] face and was of an explosive nature." ECF 40-8. The report did not list any basis for suspecting an explosion. In his deposition, Dr. Adams stated that he formed this opinion primarily based on his belief that doctors removed shrapnel from Mr. Stiffler's face. ECF 40-9, 70:18-23 ("[T]here was documented somewhere that there was a piece of shrapnel pulled out of his face."); *id.* at 74:15-16 ("[S]hrapnel doesn't get lodged into your face without having been

7

blown into it."); *id.* at 88:23-89:2 (Q: "So you are not saying that these injuries…can only be caused by something that is explosive in nature; correct?" A: "Well, the shrapnel part of it – it would be hard[.]"). But, as became clear at the hearing, Mr. Stiffler's medical records did not, in fact, indicate any shrapnel removal. ECF 56-1, 34:13-25. Therefore, the Court concludes that Dr. Adams's report is not sufficiently tied to any reliable source of information, such as the plaintiff's medical records. *Daubert*, 509 U.S. at 591.[2]

Second, Dr. Adams did not describe performing a differential diagnosis as to Mr. Stiffler. A differential diagnosis "consists of a testable hypothesis, has been peer reviewed, contains standards for controlling operation, is generally accepted, and is used outside of the judicial context." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 154-55 (3d Cir. 1999) (cleaned up). Because Mr. Stiffler's injuries had several potential causes, such a method is particularly critical here. Yet, Dr. Adams's testimony at the *Daubert* hearing suggested that rather than follow this established medical method, he followed a more "narrative-based" analysis to reach, even as he admitted, a pre-determined outcome. ECF 56-1, 54:16-55:6 (describing the possible shrapnel as "a piece of information that seemed to fit into the narrative…that was just another piece that seemed to fit with the phone being the cause"). That is, he believed he heard about shrapnel, and so he concluded that the injury must have been from an explosion.

---

[2] At his deposition, Mr. Stiffler indicated that he believed a doctor removed shrapnel from his face. ECF 40-2, 230:2-234:7. But even if Dr. Adams based his opinion on Mr. Stiffler's testimony, given the vague nature of that testimony (no exact description as to what this shrapnel consisted of, its location, its quantity), and given that no medical record actually confirms its existence, this is not the sort of reliable source of information on which an expert can entirely base his opinion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 735 (3d Cir. 1994) ("Rule 703…requires experts to rely on data of a type reasonably relied upon by experts in the field[.]").

Third, Dr. Adams's new opinions at the *Daubert* hearing can't save his old one – he will not be allowed to give any additional opinions that weren't provided in his report, at this late juncture in the case. *See* ECF 56-1. Specifically, while on the stand at the hearing, Dr. Adams for the first time opined that Mr. Stiffler's carboxyhemoglobin levels and bronchoscopy exam indicated that Mr. Stiffler had not "been in a fire for an extended period of time." *Id.* at 9:14-20. But as Dr. Adams conceded, the first time he disclosed those new opinions was during the *Daubert* hearing. *Id.* at 23:19-24:15. The Court finds that these new opinions materially differ from his original "explosive event" opinion and aren't simply an elaboration on previously disclosed opinions. Meanwhile, expert discovery in this case closed roughly six months ago, in August 2022. ECF 32; ECF 34. Though a trial date has not yet been set in this case, the Court agrees with Apple that "Rule 26 does not contemplate a game of whack-a-mole[.]" ECF 56, p. 4; *see also TQ Delta, LLC v. 2Wire, Inc.*, No. 13-1835, 2021 WL 2954356, at *3 (D. Del. Jul. 14, 2021) (applying factors outlined in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977) to determine whether failure to disclose an expert report warrants exclusion). Apple was not able to address and "fit test" Dr. Adams's newly raised bases at the *Daubert* hearing, and admitting them would require re-opening expert discovery to give Apple time to respond properly. *Id.* (*Pennypack* factors 1 and 2) This would disrupt the orderly and efficient progression of this case toward trial. *Id.* (*Pennypack* factor 3).[3]

---

[3] This is not a hypothetical concern. Dr. Adams's new opinions were stated rather generally at the *Daubert* hearing. No documentation was submitted to the Court, including the actual laboratory reports and medical records, and Dr. Adams didn't provide a sufficient basis for the reliability of the carboxyhemoglobin levels and bronchoscopy exam metrics he cited. What this means is that if the Court allowed the new opinions to be provided now, it would require a new report by Dr. Adams, a period of time for Apple to retain responsive experts, additional expert depositions for both sides, and potentially another *Daubert* hearing. It's too late for all of that.

9

In short, Dr. Adams's opinion doesn't show sufficient indicia of reliability to satisfy *Daubert*. The Court will therefore exclude his opinion.

## CONCLUSION

For the foregoing reasons, Apple's motion will be **GRANTED in part and DENIED in part**. The motion will be **DENIED** as to Mr. Ryhal, but **GRANTED** as to Dr. Adams. An appropriate order follows.

DATE: February 13, 2023                    BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge